UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ABDELHAK EL HOR,

                                              Petitioner,

-vs-                                                                            DECISION and ORDER

                                                                                     20-CV-6862 CJS

WILLIAM P. BARR, Attorney General of the United States,
THOMAS E. FEELEY, Field Office Director for Detention
and Removal, Buffalo Field Office, Bureau of Immigration
and Customs Enforcement, DEPARTMENT of
HOMELAND SECURITY,

                                            Respondents.
_____

INTRODUCTION

Proceeding *pro se*, Abdelhak El Hor ("Petitioner") (A 060-339-617) commenced this habeas proceeding pursuant to 28 U.S.C. § 2241 ("Section 2241") challenging his continued detention, as a criminal alien pursuant to 8 U.S.C. § 1226(c), by the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), pending the completion of removal proceedings against him.  For the reasons discussed below, the application is denied.

BACKGROUND

Unless otherwise noted, the facts as set forth below are taken from the petition and administrative record in this action.

1

Petitioner is a native and citizen of Morocco. On or about October 16, 2009, Petitioner was admitted to the United States and granted the status of a Lawful Permanent Resident ("LPR"). However, within five years thereafter, Petitioner pled guilty, in New York State Supreme Court, Queens County, to Assault in the Second Degree in violation of New York Penal Law § 120.05(1).[1] In particular, the charge to which Petitioner pled guilty arose during an argument with another man, when Petitioner poured a pot of hot soup on the man, injuring him.

Petitioner was originally sentenced to four months of imprisonment followed by five years of probation, but he was later convicted of violating probation and sentenced to three years in prison. The probation violation involved, *inter alia*, Petitioner shoving his probation officer.

On February 5, 2015, DHS issued a Notice to Appear charging Petitioner with being removable pursuant to INA § 237(a)(2)(A)(i) based on a conviction, within five years of admission, for a crime of moral turpitude for which a sentence of one year or longer could be imposed. (ECF No. 6-2 at p. 122).

On July 28, 2015, an Immigration Judge terminated the removal proceedings, finding that Petitioner's conviction was not final because it was being appealed. (ECF No. 6-2 at pp. 102, 155).

---

[1] New York Penal Law § 120.05(1) states that "A person is guilty of assault in the second degree when:
1. With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person[.]"

2

On June 12, 2019, the New York State Supreme Court, Appellate Division Second Department, affirmed Petitioner's conviction.

On January 3, 2020, DHS lodged an immigration detainer with the New York State Department of Corrections and Community Supervision ("DOCCS") concerning Petitioner, who was still in state custody, finishing his 3-year sentence. (ECF No. 6-2 at p. 158).

Later that same month, Petitioner belatedly filed an appeal in New York State court of the (almost-completed) three-year sentence that he had received for his violation of probation. (ECF No. 6 at p. 4).

On March 25, 2020, a DHS officer determined that Petitioner would be detained pending removal proceedings pursuant to INA § 236. (ECF No. 6-2 at p. 106).

On March 27, 2020, Petitioner was taken into DHS custody, upon the completion of his state prison sentence. (ECF No. 6 at p. 4).

On April 29, 2020, and May 13, 2020, Petitioner appeared before an Immigration Judge and requested adjournments to allow him to consult with an attorney. (ECF No. 6 at p. 4).

On June 18, 2020, Petitioner filed a motion to terminate the removal proceeding insofar as it was based on INA § 237(a)(2)(A)(iii) (aggravated felony, crime of violence), arguing that his conviction for Assault in the Second Degree was not an aggravated felony. DHS opposed that application.   On June 30, 2020, the Immigration Judge denied Petitioner's application.

3

On July 1, 2020, Petitioner filed a motion to terminate the removal proceedings on the grounds that his criminal conviction was not final, as he was belatedly appealing his sentence.

On July 14, 2020, DHS added an additional ground for Petitioner's removal, based on INA § 237(a)(2)(A)(i) (conviction, within five years of admission, for a crime of moral turpitude for which a sentence of one year or longer could be imposed).

On July 15, 2020, the Immigration Judge terminated the removal proceeding based on the aggravated felony ground, but sustained the charge of removability based on a conviction for a crime of moral turpitude, namely, Assault in the Second Degree. (ECF No. 6-2 at p. 71).   On August 12, 2020, the Immigration Judge found that Petitioner was removable under INA § 237(a)(2)(A)(i).

On September 2, 2020, the Immigration Judge ordered that Petitioner be removed to Morocco. (ECF No. 6-2 at p. 3).

Petitioner filed an appeal to the Board of Immigration Appeals ("BIA"), and his original briefing deadline was November 27, 2020, but Petitioner obtained an extension of that deadline until December 18, 2020. (ECF No. 6-2 at p. 239).

On October 19, 2020, Petitioner filed the subject action, alleging that he had been detained since March 27, 2020.   Liberally construed, the Petition purports to assert the following claims: 1) violation of Petitioner's Fifth Amendment Substantive Due Process rights based on "indefinite detention" without a sufficient justification; and 2) violation of Petitioner's Fifth Amendment Procedural Due Process rights based on his detention for

more than six months without a hearing at which the Government was required to prove by clear and convincing evidence that he is a flight risk or a danger to the community.[2]  As for relief, the Petition requests, *inter alia*, that the Court grant him "release or, at a minimum, a constitutionally adequate bond hearing."

On December 16, 2020, DHS asked the BIA to grant summary affirmance of the removal order.  On December 17, 2020, Petitioner filed his appeal brief with the BIA. Evidently the appeal is still pending, as the Court has not been told otherwise.

On January 13, 2021, the Government filed its response to the subject Petition, asserting the following arguments: 1) the Petition fails to identify a proper respondent and should therefore be dismissed; 2) insofar as the Petition is based on *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) ("*Zadvydas*"), it should be dismissed since Petitioner's removal order is on appeal and is therefore not final;  3) any delay in the removal proceedings has been caused by Petitioner; and 4) Petitioner's detention is not unreasonably prolonged so as to cause a due process violation.

On February 18, 2021, Petitioner filed a reply in which he reiterates the arguments in the Petition and contends that according to *Demore v. Kim*, 538 U.S. 510, 523, 123 S. Ct. 1708, 1717, 155 L. Ed. 2d 724 (2003), "detention [under INA § 236(c)] without a bond

---

[2] The Petition also contains references to other types of claims, but these sections of the pleading seems to have been copied and pasted from other petitions or court decisions that have no relevance to the facts of Petitioner's case. For example, as discussed further below, the Petition discusses a *Zadvydas* claim, but *Zadvydas* is not relevant to Petitioner since his order of removal has not yet become final.

hearing is unconstitutional when it exceeds six months."[3]   Petitioner also asserts that he is neither a flight risk nor a danger to the community.

The Court has considered the record and the parties' submissions.

## DISCUSSION

Petitioner has filed the subject petition pursuant to 28 U.S.C. § 2241, proceeding *pro se*, and consequently the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).   "[F]ederal courts have jurisdiction under § 2241 to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.' 28 U.S.C. § 2241." *Henderson v. I.N.S.*, 157 F.3d 106, 122 (2d Cir. 1998).

<u>The Proper Respondent</u>

The Government first contends that the Court should dismiss the Petition due to Petitioner's failure to sue a proper respondent, stating:

> The federal habeas statute mandates that the only proper respondent to a habeas petition is "the person who has custody over" the petitioner. 28 U.S.C. § 2242. Likewise, the Supreme Court has confirmed "that there is generally only one proper respondent to a . . . habeas petition." *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004). This Court, too, has repeatedly recognized that the only proper Respondent in an immigration habeas proceeding relating to detention at the Buffalo Federal Detention Facility is Jeffrey Searls, the person with direct control over Petitioner's detention.

---

[3]  Reply, ECF No. 10 at pp. 7-8.

ECF No. 6 at p. 6.   The Government contends that respondents named in the Petition should be dismissed.

The Court agrees that Searls is the only proper respondent in this action. *See, Gutierrez v. Barr*, No. 20-CV-6078-FPG, 2020 WL 2059845, at *3 (W.D.N.Y. Apr. 29, 2020) ("[T]he only proper respondent is Jeffrey Searls, Officer in Charge at the Buffalo Federal Detention Facility. See ECF No. 5 at 20. As the "person with direct control" over Petitioner's detention, id., he is the proper respondent given Petitioner's requested relief. *See Hassoun v. Sessions*, No. 18-CV-586, 2019 WL 78984, at *7 (W.D.N.Y. Jan. 2, 2019) ("The majority view in the Second Circuit requires the immediate custodian, generally the prison warden, to be named as a respondent in core immigration habeas proceedings— i.e., those challenging present physical confinement." (quotation omitted)).").   Accordingly, the Court will dismiss the other named respondents in this action and direct the Clerk of the Court to amend the caption to list Searls as the respondent.

<u>Any Claim Under *Zadvydas* is Premature</u>

The Government next contends that to the extent Petitioner is asserting a claim under *Zadvydas v. Davis*, it should be dismissed as premature since his removal order has not yet become final.[4]   The Court again agrees. *See, Fremont v. Barr*, No. 18-CV-1128,

---

[4] *See*, Respondent's Memo of Law, ECF No. 6 at p. 10 ("Although Petitioner cites *Zadvydas* repeatedly in the Petition, *Zadvydas* does not apply to his case. *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). *Zadvydas* applies to Section 1231 cases in which a removal order has become final, the ninety-day removal period has passed, an additional presumptively reasonable six months has passed, and a petitioner meets his burden to

2019 WL 1471006, at *3 (W.D.N.Y. Apr. 3, 2019) ("Fremont now is detained under 8 U.S.C. § 1226(c). Because Fremont is not detained under § 1231(a), this Court rejects his argument that his detention violates that provision as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).").

<u>Petitioner Is Subject to Mandatory Detention Under the Relevant Statute</u>

Respondent maintains, and Petitioner has not disputed, that Petitioner's continued detention is required by statute, namely, 8 U.S.C. § 1226(c). In this regard, 8 U.S.C. § 1226(c)(1)(C) states in pertinent part that "[t]he Attorney General shall take into custody any alien who--  . . .  (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year[.]" Further, 8 U.S.C. § 1227(a)(2)(A)(i) states: "Any alien who-- (I) is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255(j) of this title) after the date of admission, and (II) is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable."

Here, there is no dispute that within five years of his admission to the U.S., Petitioner was convicted, upon his plea of guilty, to Assault in the Second Degree, a crime for which a sentence of greater than one year can be imposed. In particular, Petitioner was

---

show an insufficient likelihood of removal. Because Petitioner's case is on appeal to the BIA, his removal order is not final. *Zadvydas* does not apply and cannot form the basis for a due process claim.").

convicted of violating Penal Law § 120.05(1), intentionally causing serious injury to another.   Petitioner does not argue in this action that he was not convicted of a crime of moral turpitude, and it appears that a violation of Penal Law § 120.05(1) is such a crime. *See, e.g., Singh v. U.S. Dep't of Homeland Sec.*, 526 F.3d 72, 79 (2d Cir. 2008) ("Here, the IJ relied upon three documents in evidence to conclude that Singh had been convicted of second degree assault under N.Y.P.L. § 120.05(1)—a crime that Singh does not challenge here as being one of moral turpitude for purposes of his removal proceedings."). Consequently, Petitioner is properly subject to mandatory detention under 8 U.S.C. § 1226(c) pending the completion of removal proceedings.

<u>Petitioner's Substantive Due Process Claim Lacks Merit</u>

Petitioner contends that his substantive due process rights are being violated since he is subject to "indefinite detention" without a sufficient justification.   However, the Court disagrees.

"[D]etention during deportation proceedings [i]s a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. at 523, 123 S. Ct. at 1717 ("*Demore*"). The Supreme Court has long held that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id*. This includes detention of lawful permanent resident aliens ("LPRs"). *See, id.*, 538 U.S. at 513, 123 S. Ct. at 1712 (The alien, Kim, was a lawful permanent resident).   In *Demore*, the Supreme Court noted that, in many cases, detention pending removal lasts only a few months.   However, the Court indicated that longer detention may occur, and is still

9

acceptable, where the alien requests continuances of removal proceedings. *See, id.*, 538 U.S. at 530–31, 123 S. Ct. at 1721 ("[R]espondent was detained for somewhat longer than the average—spending six months in INS custody prior to the District Court's order granting habeas relief, but respondent himself had requested a continuance of his removal hearing.") (footnote omitted).

A substantive due process violation may occur where an alien who has been detained pending removal can establish that his removal is not reasonably foreseeable. *See, Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) (Observing that in *Zadvydas*, "[i]n order to save § 241 from unconstitutionality, the Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute. . . . Under *Zadvydas*, then, detention of an alien 'once removal is no longer reasonably foreseeable' not only violates § 241, it also violates the Due Process Clause.").   However, there is no due process violation where removal remains reasonably foreseeable. *See, id.* ("Wang's due process rights are not jeopardized by his continued detention as long as his removal remains reasonably foreseeable.").

In the instant case, Petitioner has not made any showing that his removal is unlikely to occur in the near future.   To the contrary, as already discussed, Petitioner was admittedly convicted of crime that appears to constitute a crime of moral turpitude, and, if the BIA upholds the Immigration Judge's determination on that point, Petitioner has not identified any obstacles to his removal, other than any continued legal challenges that he may assert.   Petitioner's detention is not indefinite or potentially permanent; rather it will

end once his removal proceedings are complete.    Although Petitioner's removal proceedings have been going on for more than a year now, that fact, without more, does not result in a substantive due process violation. *See, e.g., Beqir v. Clark*, 220 F. App'x 469, 471 (9th Cir. 2007) ("Krasniqi has made no showing that his removal is not practically attainable. While his detention has been lengthy, its length is attributable to the administrative and judicial processes.    Moreover, his detention has a definite termination point. Upon completion of judicial review of his petition, our stay of the removal order will be lifted. Thus, Krasniqi's detention meets substantive due process requirements."); *see also, Perez v. Aviles*, 188 F. Supp. 3d 328, 332–33 (S.D.N.Y. 2016) ("Perez's detention has not been arbitrary or unreasonable. While Perez's detention has been lengthy, there is no indication of an 'unreasonable delay' by DHS in pursuing or completing Perez's removal.    Rather, the length of Perez's detention has largely been due to his own appeals. Although Perez has acted within his rights in challenging his removal orders, he may not rely on the extra time resulting therefrom to claim that his prolonged detention violates substantive due process.") (citations omitted).

Consequently, Petitioner's substantive due process claim lacks merit and is denied.

<u>Petitioner's Procedural Due Process Claim Lacks Merit</u>

The remaining question is whether Petitioner's detention, since March 27, 2020, without a bond hearing, violates his procedural due process rights.[5]   Recently, another

---

[5] As mentioned earlier, Petitioner maintains that his detention since March 2020, while he appeals the IJ's

11

judge of this District provided a comprehensive description of the current state of the law in this Circuit concerning as-applied procedural due process challenges under 8 U.S.C. § 1226(c) following the Supreme Court's ruling in *Jennings*:

> [Prior to the Supreme Court's decision in *Jennings*,] the Ninth Circuit required bond hearings to be held for aliens detained pursuant to 8 U.S.C. § 1226(c) and 8 U.S.C. § 1225(b), as a matter of statutory interpretation. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1133 (9th Cir. 2013). Moreover, the Second Circuit had adopted the Ninth Circuit's approach—at least as it pertained to aliens detained pursuant to § 1226(c)—and imposed a bright-line rule that those alien detainees be afforded a bond hearing after six months of immigration detention. *See Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015) ("[I]n order to avoid the constitutional concerns raised by indefinite detention, an immigrant detained pursuant to section 1226(c) must be afforded a bail hearing before an immigration judge within six months of his or her detention."), *cert. granted, judgment vacated*, —— U.S. ——, 138 S. Ct. 1260, 200 L.Ed.2d 415 (2018).
>
> ***
>
> *Jennings* held that § 1225(b) does not contain an implicit six-month time limit at which point a bond hearing must be held, thus eliminating the statutory six-month bright-line rule formulated in *Rodriguez* and adopted by *Lora*. 138 S. Ct. at 844. As a result, the Supreme Court subsequently granted certiorari in *Lora*, vacated the judgment, and remanded the case for "further consideration" in light of its decision in *Jennings*. *Shanahan v. Lora*, —— U.S.

---

order of removal, and without a bond hearing, violates his rights to substantive due process and procedural due process under the Fifth Amendment to the U.S. Constitution.   The Petition does not make any assertions about the conditions of Petitioner's confinement at the BFDF, nor does it purport to argue the likelihood of him winning his appeal.   Rather, the Petition simply expresses the belief that once mandatory detention under 8 U.S.C. § 1226(c) exceeds six months in duration, it becomes "indefinite," thereby violating due process and entitling him to additional procedural protections, namely a hearing at which the Government must show by clear and convincing evidence that he is a flight risk or a danger to the community. See, Petition at ¶ ¶ 6, 8.

——, 138 S. Ct. 1260, 200 L.Ed.2d 415 (2018). On remand, the Second Circuit dismissed the case as moot because the petitioner in that matter had been granted a cancellation of removal. *See Lora v. Shanahan*, 719 F. App'x 79, 80 (2d Cir. 2018).

The Second Circuit has not addressed, post-*Jennings* and post-*Lora*, the standard to be utilized by courts in addressing procedural due process claims for aliens detained in the immigrant habeas context. However, the overwhelming majority of district courts within the Circuit to have addressed the issue in the context of 8 U.S.C. § 1226(c)—pertaining to the detention of criminal aliens—have adopted a case-by-case approach where "courts examine each individual's detention circumstances to determine whether it has become 'unreasonable or unjustified.'" *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (quoting *Demore v. Kim*, 538 U.S. 510, 532, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003)). The case-by-case approach is an "as-applied, fact-based analysis ... derived from the Supreme Court's decisions in [*Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001)] and *Demore*." *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018); *see Gomes Herbert v. Decker*, No. 19-CV-760 (JPO), 2019 WL 1434272, at *2 (S.D.N.Y. Apr. 1, 2019) (noting that the *Sajous* framework has been "overwhelmingly adopted" in the Southern District of New York (quotation omitted)); *Dukuray v. Decker*, No. 18 CV 2898 (VB), 2018 WL 5292130, at *3 (S.D.N.Y. Oct. 25, 2018) (same); *c.f. Hechavarria v. Sessions*, No. 15-CV-1058, 2018 WL 5776421, at *7-9 (W.D.N.Y. Nov. 2, 2018) (utilizing both a multi-factor test and the traditional procedural due process analysis articulated in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)), enforcement granted *sub nom. Hechavarria v. Whitaker*, 358 F. Supp. 3d 227 (W.D.N.Y. 2019); *Joseph v. Decker*, No. 18-CV-2640(RA), 2018 WL 6075067, at *10 n.7 (S.D.N.Y. Nov. 21, 2018) (concluding that "[t]he *Mathews* test is consistent with the approach of ... considering immigration-specific factors for the procedural due process analysis," and the majority of courts in this Circuit seem to have adopted the fact-based inquiry approach), appeal withdrawn, No. 19-245, 2019 WL 3334802 (2d Cir. May 1, 2019).

The factors set forth by district courts in this Circuit for a court to consider in

determining whether an alien's length of detention has become unreasonable or unjustified in the § 1226(c) context can be summed up as follows:

> (1) the length of time the petitioner has been detained; (2) the party responsible for the delay; (3) whether the petitioner has asserted defenses to removal; (4) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (5) whether the detention facility is meaningfully different from a penal institution for criminal detention; (6) the nature of the crimes committed by the petitioner; and (7) whether the petitioner's detention is near conclusion.

*Cabral*, 331 F. Supp. 3d at 261. These factors require consideration of multiple variables in determining whether a detainee has been held for an unreasonably lengthy period of time. While "detention that has lasted longer than six months is more likely to be 'unreasonable,' and thus contrary to due process, than detention of less than six months," *Sajous*, 2018 WL 2357266, at *10, "the sheer length of the proceedings is not alone determinative of reasonableness," *Vallejo v. Decker*, No. 18-CV-5649 (JMF), 2018 WL 3738947, at *3 (S.D.N.Y. Aug. 7, 2018) (quoting *Young v. Aviles*, No. 15-CV-4545 (JMF), 2015 WL 4579204, at *1 (S.D.N.Y. July 29, 2015)), appeal withdrawn, No. 18-2881, 2019 WL 1503029 (2d Cir. Mar. 25, 2019). For example, while "'aliens should not be punished for pursuing avenues of relief and appeals[,]' ... evidence of bad faith delays may cut against them." *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *7 (S.D.N.Y. July 25, 2018) (first alteration in original) (quoting *Sopo v. U.S. Attorney Gen.*, 825 F.3d 1199, 1218 (11th Cir. 2016), *vacated*, 890 F.3d 952 (11th Cir. 2018)), *appeal withdrawn*, No. 18-2824, 2019 WL 1377025 (2d Cir. Feb. 5, 2019).

*Abdi v. McAleenan*, 405 F. Supp. 3d 467, 475–77 (W.D.N.Y. 2019) (Wolford, J.).

As the foregoing discussion indicates, the question now before this Court is whether, in light of the factors set forth above, Petitioner's continued detention under § 1226(c) without a bond hearing has become "unreasonable or unjustified," such that it

violates his right to procedural due process. The analysis must start, however, with the recognition that *in general* the detention of criminal aliens like Petitioner, without a bond hearing, for the entire period of their removal proceedings does *not* violate due process. *See, Demore*, 538 U.S. at 531, 123 S.Ct. at 1721-1722 ("Detention during removal proceedings is a constitutionally permissible part of that process.").

As it has been interpreted, *Demore* merely leaves the door open to as-applied challenges to continued detention where the detention has truly become unreasonable or unjustified.[6] It may be true that some "judges in this district have routinely held that . . . prolonged mandatory detention [of criminal aliens] pending removal proceedings, without a bond hearing, 'will – at some point – violate the right to due process.'" *Yusuf v. Edwards*, No. 18CV3605GBDBCM, 2019 WL 4198798, at *7 (S.D.N.Y. July 2, 2019) (collecting cases). However, this Court does not agree with the idea that such mandatory detention will *inevitably* become unreasonable or unjustified after a certain amount of time,[7] since it is contrary to *Demore*.[8] Provided that removal proceedings are progressing toward

---

[6] *See, e.g., Msezane v. Gartland*, No. 5:19-CV-51, 2020 WL 1042293, at *6 (S.D. Ga. Jan. 29, 2020) ("In *Demore*, the United States Supreme Court held that § 1226(c) does not—on its face—violate the due process rights of criminal aliens who are detained for the limited period of their removal proceedings. However, the Court left open the possibility of as-applied procedural due process challenges to § 1226(c) detention, where continued detention becomes unreasonable or unjustified. *Id.* at 531–33 (Kennedy, J., concurring)"), report and recommendation adopted, No. 5:19-CV-51, 2020 WL 1046796 (S.D. Ga. Mar. 3, 2020).

[7] The notion that such detention will violate due process "at some point" is a reference to the passage of time, primarily.

[8] Although the Supreme Court in *Demore* discussed the average length of time that removal proceedings

completion, even if slowly, continued mandatory detention without a bond hearing does not violate due process unless the detention, beyond the fact of the delay, has become unreasonable or unjustified on the Government's part.[9]

Under the particular facts and circumstances of this action, the Court finds that Petitioner's continued detention without a hearing does not violate his procedural due process rights. According to *Demore*, Petitioner's detention is generally unobjectionable from a due process standpoint, and nothing about the particulars of his case make such detention unreasonable or unjustified. Assuming *arguendo* that the so-called *Sajous* factors are the appropriate ones to apply here, the only factor which weighs in Petitioner's favor is the length of time that he has been detained pending removal proceedings – a year.[10] However, it does not appear to the Court that there has been any notable "delays"

---

were then taking in the year 2003, it did not suggest that removal proceedings taking longer than that would result in due process violations. It is a mistake, in the Court's view, to use that discussion as a yardstick for determining a due process violation. *See, e.g., Yusuf v. Edwards*, No. 18CV3605GBDBCM, 2019 WL 4198798, at *8 (S.D.N.Y. July 2, 2019) ("The first and "most important" *Sajous* factor, 2018 WL 2357266, at *10, weighs heavily in favor of granting the petition here. Yusuf has now been continuously detained for almost sixteen months – well beyond the "brief period" (averaging "about five months" when the alien "chooses to appeal") deemed reasonable in *Demore*, 538 U.S. at 530, and longer than in most of the post-*Jennings* cases cited above."). The point of that discussion in *Demore* was not to set a particular outer limit for such detention, but to emphasize that detention pending removal proceedings, unlike the detention found to be unconstitutional in *Zadydas*, has a "definite termination point" and is therefore neither "indefinite" nor "potentially permanent." *Demore*, 538 U.S. at 529, 123 S. Ct. at 1720.

[9]Volume-related litigation delays are a regrettable fact of life, and do not entitle an otherwise detainable criminal alien to gain release pending removal proceedings.

[10] This does not exceed the period of incarceration that Petitioner served for the crimes for which the IJ

in the removal proceedings, nor has Petitioner alleged that there has been.   Moreover, to the extent that the removal proceedings have been "delayed," Petitioner is the only party to have requested adjournments or extensions of time.

Continuing with the *Sajous* factors, neither party has devoted argument to whether the conditions of confinement at the Buffalo Federal Detention Facility in Batavia, New York, are significantly better than, worse than, or the same as, those at a penal institution. Additionally, Petitioner's crime of conviction involved the violent act of pouring hot soup on someone.[11]   And finally, Petitioner's detention under § 1226(c) appears to be nearing its conclusion, since he has already been ordered removed, and all that remains is the completion of his appeal process.

Having considered all of the various facts and circumstances discussed above, the Court finds that Petitioner's procedural due process claim lacks merit, since he has not shown that his continued detention as a criminal alien pending his removal proceedings is either so unreasonable or unjustified as to entitle him to a hearing, at which the Government must prove by clear and convincing evidence that he is either a flight risk or a danger to the community.

---

found him to be removable, which was more than three years.

[11] After receiving a four-month jail sentence for this act, Petitioner was re-sentenced to three years in prison for, among other things, shoving his probation officer.

CONCLUSION

The habeas petition is denied, and this action is dismissed. The Clerk is directed to amend the caption to list "JEFFREY SEARLS, in his official capacity as Acting Assistant Field Office Director and Administrator of the Buffalo Federal Detention Facility," as the sole respondent to this action and to dismiss the other named respondents. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Decision and Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.

Dated:     Rochester, New York
           April 15, 2021

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge